UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:20-cr-80049

UNITED STATES OF AMERICA

vs.

LEONARD SHEMTOB and
STRONG SUPPLEMENTS, LLC,

      Defendants.
_____/

## FACTUAL PROFFER

The United States of America and Defendants Leonard Shemtob and Strong Supplements, LLC (the "Defendants") agree that if this case were to proceed to trial, the government would prove beyond a reasonable doubt the following facts. They further agree that these are not all the facts that the United States would prove if the case proceeded to trial, but are sufficient to prove a violation of Title 21, United States Code, Section 846, as charged in the information.

From on or about December 18, 2014, through in or around March 25, 2015, in Van Nuys California, and elsewhere, Leonard Shemtob and Strong Supplements did willfully, that is, with the intent to further an object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Phillip Braun, Aaron Singerman, Blackstone Labs, LLC, and others known to the United States to distribute Schedule III controlled substances, that is the anabolic steroids dimethazine, methylstenbolone, and methyl-1-etiocholenolol, as defined by Title 21 United States Code, Section 802(41)(A) and C(i)-(iii) in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E)(i).

During the time period relevant to this matter, Shemtob owned and controlled Strong Supplements LLC ("Strong Supplements"), a company incorporated in Delaware and based in California. As sole owner, Shemtob acted within the scope of his authority in directing Strong Supplements and company agents. Strong Supplements sold various products to consumers that were marketed as "dietary supplements." Strong Supplements purchased these products from other companies who manufactured or distributed them. Strong Supplements' most profitable products contained anabolic steroids, including "designer" anabolic steroids, which the Defendants referred to as "prohormones." In particular, Strong Supplements repeatedly purchased products containing anabolic steroids from Blackstone Labs, LLC ("Blackstone Labs"), a corporation located in Boca Raton, Florida.

The Defendants began ordering products from Blackstone Labs in or around 2013. Initially, the Defendants purchased these products directly from Robert DiMaggio, an owner of Blackstone Labs. DiMaggio introduced the Defendants via email to Phillip "PJ" Braun ("Braun") and Aaron Singerman ("Singerman"), who co-owned Blackstone Labs. Two products that the Defendants repeatedly purchased from Blackstone Labs were "Super DMZ RX 2.0" and "Alpha-1 Max." The Defendants knew that Super DMZ RX 2.0 contained the active ingredients dimethazine and methylstenbolone, two synthetic designer steroids. The Defendants knew that Alpha-1 Max contained the active ingredient methyl-1-etiocholenolol, a synthetic designer steroid. The Defendants repeatedly purchased both products from Blackstone throughout 2013 and 2014.

As early as September of 2014, the Defendants knew that the U.S. Congress was considering a new federal law, H.R. 4771, the Designer Anabolic Steroid Control Act (also known as "DASCA"), that would amend the Federal Controlled Substances Act so that all

designer steroids would be controlled substances subject to criminal penalties.  Knowing that this law would significantly affect Strong Supplements and Blackstone Labs' business, Leonard Shemtob monitored the law's passage and sought out a lobbying firm to attempt to delay or stop the law's passage.  Shemtob knew that the law would ban substances that were substantially similar to anabolic steroids listed on Schedule III of the Controlled Substances Act.  In September 2014, Shemtob described the law's effect as banning "anything that 'promotes muscle growth.'"

The Defendants also received a formal proposal from the lobbying firm, which proposed a plan to stop or delay the enactment of DASCA.  The lobbying proposal described the bill's effect as "expand[ing] the definition of anabolic steroids in the Controlled Substances Act to include 25 specific substances and any drug or hormonal substance that is derived from or has a chemical structure substantially similar to, one or more of the listed anabolic steroids."  Shemtob emailed Singerman a copy of the lobbying proposal.  Shemtob also joined at least one telephone call with Braun, Singerman, and the lobbying firm during which the substance of DASCA was discussed.  After the phone call, Shemtob wrote an email to Singerman with a summary of their discussion, on or around October 3, 2014.  The email summary noted in part, "if this bill passes, people would still want these kinds of supplements and it would force many companies to manufacture[] product in non gmp certified facilities and push on [sic] them on the black market.  Making it very risky for individuals to buy these types of products that are made in garages and bathtubs.  Thus it would be a danger to the consumer."

After DASCA became effective on December 18, 2014, the Defendants continued to purchase Super DMZ RX 2.0 and Alpha-1 Max from Blackstone Labs for Strong Supplements, including an order placed for both products on or around March 11, 2015.  The Defendants knew

that the sale of these products was in violation of the Controlled Substances Act following the passage of DASCA.  For example, Shemtob emailed a group of other supplement retailers on or around March 12, 2015, "[A]fter this month we will no longer be selling designer[] [steroids]. Based on the information that has been communicated to us, they are not just enforcing this based on the listed compounds, all designers fall within the scope.  We will sell what we have left and then we are done with them."  Shemtob then placed another order for both products with Blackstone Labs on behalf of Strong Supplements on March 25, 2015.

//

//

//

The government also would prove beyond a reasonable doubt that Strong Supplements and Leonard Shemtob purchased more than 600 bottles of anabolic steroids from co-conspirators and distributed them to customers throughout the United States, with each bottle containing 60 capsules.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

GUSTAV W. EYLER
DIRECTOR
U.S. DEPARTMENT OF JUSTICE
CONSUMER PROTECTION BRANCH

Date: 5/12/2021

By: _____
ALISTAIR READER
JOHN BURKE
STEVEN GRIPKEY
TRIAL ATTORNEYS
U.S. DEPARTMENT OF JUSTICE

Date: 5/13/2021

_____
DANIEL BEHESNILIAN, ESQ.
ATTORNEY FOR DEFENDANTS

Date: 5/13/2021

_____
LEONARD SHEMTOB
DEFENDANT

Date: 5/13/2021

_____
STRONG SUPPLEMENTS, LLC
DEFENDANT
BY LEONARD SHEMTOB
ITS DULY AUTHORIZED
REPRESENTATIVE